UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 22-CR-211 (TJK) |
| : | 19-CR-296 (TJK) |
| DELONTE INGRAHAM, : | |
| also known as "Delonte Ingram," : | |
| : | |
| Defendant. : | |

### UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby files its sentencing memorandum to assist the Court's consideration of the relevant issues. As noted below, Defendant faces an advisory Guidelines range of 30 months to 37 months in Case Number 22-CR-211, and an advisory Guidelines range of 12 months to 18 months in Case Number 19-CR-296. For the reasons articulated below, the United States recommends a total sentence of 42 months' imprisonment – which represents a sentence at the low-end of the applicable Guidelines range in both cases, with those sentences to be served consecutively.

### PROCEDURAL HISTORY

Defendant was charged by criminal complaint on June 9, 2022, with Unlawful Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). (Docket Entry 1). On June 10, 2022, Defendant was ordered held without bond pending trial. Minute Entry, 6/10/22. That same day, a federal grand jury sitting in the District of Columbia returned a one-count Indictment, charging Defendant with Unlawful Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). (Docket Entry 5).

The then litigated Defendant's Motion to Suppress Evidence and Motion to Dismiss the Indictment. (Docket Entries 12-14, 30-33, 35-37).   On August 3, 2023, the Court denied both of Defendant's motions.  <u>Minute Entry</u>, 8/3/23.  On October 18, 2023, Defendant pled guilty pursuant to a written plea agreement.  (Docket Entries 38-40).  Defendant's Sentencing Hearing is scheduled for March 19, 2024.

## ANALYSIS

### I.   THE OFFENSE CONDUCT

On Wednesday, June 08, 2022, at approximately 4:59 p.m., within the 3600 block of Georgia Avenue NW, Washington DC, Officer Ishakwue and Officer Green were patrolling in the 3600 blocks of Georgia Avenue NW, Washington DC, in full police uniform. Officer Green, while sitting inside of his scout car, observed a male who was later identified by word of mouth as Defendant Delonte Ingraham. Defendant was observed walking within the 3600 block of Georgia Avenue NW, with an upside-down "L" in the front of his sweatpants.

The upside-down "L" shape that was observed by Officer Green is consistent with the shape of a firearm. Furthermore, Defendant was leaning forward while walking. Defendant was looking over his right shoulder after making eye contact with Officer Green. Officer Green and Officer Ishakwue, then exited their patrol cruiser and walked over to Defendant to make contact. Officer Green asked Defendant about the "L" shaped object in the front of his sweatpants and Defendant Ingraham replied: "You don't have the right to search me," "I don't consent to a search," "what's your probable cause?" Officer Green advised Defendant Ingraham that he has the right to say no to a pat down. Officers then asked Defendant Ingraham if he would consent to a pat down and Defendant Ingraham answered "No".

Officer Green then advised Defendant Ingraham that he was going to conduct a protective pat down and if nothing is found he would conduct a Stop and Frisk report. Officer Green moved closer to Defendant Ingraham and reached to the area where he observed the "L" shaped object on Defendant Ingraham's sweatpants and Defendant Ingraham pulled away and attempted to reached inside his sweatpants. Officer Green then removed his MPD issued service pistol from its holster in a high tuck and Defendant Ingraham removed his hand from his sweatpants. Officer Green then touched the area where he observed the "L" shape and immediately felt a hard object that was, in his experience, consistent with a firearm and not consistent with the human anatomy. Officer Green immediately alerted Officer Ishakwue and Officer Rodriquez that Defendant Ingraham has a firearm on his person. Officers on scene tried placing Defendant Ingraham in handcuffs and the defendant resisted handcuffing by pulling away his hands while Officers tried to place him into handcuffs.

Officer Green was able to remove a firearm from the front of Defendant Ingraham's sweatpants where he observed the "L" shape. The firearm was a Smith & Wesson, semi-automatic .45 caliber handgun with serial number HSD4015. The firearm was loaded with 7 rounds of ammunition in the magazine and 1 round of ammunition in the chamber.

At the time of his arrest on June 8, 2022, Defendant was aware that he had previously been convicted of felony crimes punishable by more than one year in prison, including in Case Number 19-CR-296 (TJK). There are no firearms or ammunition manufacturers in the District of Columbia.

## II.     UNITED STATES' ANALYSIS OF THE SENTENCING GUIDELINES

Even though the Sentencing Guidelines are advisory, United States v. Booker provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); United States v. Brown, 892 F.3d 385, 399 (D.C. Cir. 2018). The

Supreme Court has noted that the Guidelines provide "the starting point and the initial benchmark" for sentencing. Gall v. United States, 590 U.S. 38, 49 (2007); see also United States v. Dorcely, 454 F.3d 366, 375 (D.C. Cir. 2006) ("Booker has not changed how the Guidelines range is to be calculated.") Moreover, the Guidelines' recommended sentencing range will ordinarily "'reflect a rough approximation of sentences that might achieve [18 U.S.C.] § 3553(a)'s objectives.'" Kimbrough v. United States, 552 U.S. 85, 108-09 (2007) (quoting Rita v. United States, 551 U.S. 338, 347-50 (2007)); Dorcely, 454 F.3d at 376 (noting that "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").

To calculate a Guidelines sentence, a district court must first select the applicable offense guideline and then select the base offense level within that applicable offense guideline. United States v. Flores, 912 F.3d 613, 616 (D.C. Cir. 2019). As the D.C. Circuit has long held, this inquiry must include an evaluation of all relevant conduct that could affect the Guidelines calculation.

> In the post-Booker world, the court must calculate and consider the applicable Guidelines range but is not bound by it. Under the Guidelines, "the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction." Witte v. United States, 515 U.S. 389, 393 (1995) (citing U.S.S.G. § 1B1.3). Section 1B1.3 details the conduct the sentencing court may consider in determining the applicable Guidelines range and the commentary to that section states, "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S.S.G. § 1B1.3, comment., backg'd.

Dorcely, 454 F.3d at 375. Moreover, Defendant is liable both for his own actions, as well as any actions of his co-conspirators which were: within the scope of the conspiracy, undertaken in furtherance of the conspiracy, and reasonably foreseeable to Defendant in connection with the conspiracy. U.S.S.G. § 1B1.3(a)(1)(B); United States v. Childress, 58 F.3d 693, 724-25 (D.C. Cir. 1995).

4

A. **Calculation of Defendant's Adjusted Offense Level**

Pursuant to the written plea agreement, the parties agreed to the following Guidelines calculation.

Case Number 22-CR-211

| | | |
|---|---|---|
| U.S.S.G. § 2K2.1(a)(4) | Base Offense Level | 14 |
| U.S.S.G. § 3E1.1 | Acceptance of Responsibility | - 2 |
| | | **12** |

Case Number 19-CR-296

U.S.S.G. § 7B1.1(a)(2)          Grade B. Violation

B. **Calculation of Defendant's Criminal History Category**

U.S.S.G. § 4A1.1 governs the calculation of Defendant's criminal history for Guidelines' purposes. Section 4A1.1 assigns "points" for each of a defendant's prior sentences of imprisonment; the number of criminal history "points" assigned to each sentence depends on the severity of the sentence and when it was imposed. U.S.S.G. §§ 4A1.1(a)-(c) and n.3; 4A1.2(e).

Defendant was convicted of Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by More Than One Year in Prison in the United States District Court for the District of Columbia Case Number 19-cr-296 (TJK). On May 21, 2020, Defendant was sentenced to 36 months incarceration followed by 36 months supervised release. This offense warrants 3 criminal history points pursuant to U.S.S.G. § 4A1.1(a). Defendant was on supervised release in Case Number 19-CR-296 when he was arrested in this case, which warrants an additional 1 criminal history points pursuant to U.S.S.G. § 4A1.1(c).

Defendant was convicted of two counts of Second Degree Theft in D.C. Superior Court Case Numbers 2017-CMD-012134 and 2017-CMD-010002. On November 16, 2017, Defendant was sentenced to 180 days incarceration with 135 days suspended, to be followed by one year of

5

supervised probation. On September 27, 2018, Defendant's supervised release was revoked, and he was sentenced to 135 days of confinement. This conviction warrants 2 criminal history points pursuant to U.S.S.G. §§ 4A1.1(b), 4A1.2(k)(1).

Defendant was convicted of Destruction of Property less than $1,000 in D.C. Superior Court Case Number 2016-CMD-002866. On May 19, 2016, Defendant was sentenced to 180 days confinement, all of which was suspended, to be followed by 1 year of probation. On July 12, 2016, Defendant's probation was revoked, and Defendant was sentenced to 180 days' confinement. This conviction warrants 2 criminal history points pursuant to U.S.S.G. §§ 4A1.1(b), 4A1.2(k)(1).

Defendant was convicted of sentenced to Attempted Second Degree Theft in D.C. Superior Court Case Number 2014-CMD-10366. On October 16, 2014, Defendant was sentenced to time-served – approximately 3 months. This conviction warrants 2 criminal history points pursuant to U.S.S.G. § 4A1.1(b).

Defendant was convicted of Attempted Distribution of Cocaine in D.C. Superior Court Case Number 2009-CF2-11479. On October 28, 2009, Defendant was sentenced to 14 months' confinement to be followed by 5 years' supervised release. On July 3, 2014, Defendant's parole was revoked in this case and he was sentenced to 18 months' confinement. This offense warrants 3 criminal history points pursuant to U.S.S.G. §§ 4A1.1(a); 4A1.2(k)(1).

Accordingly, the parties estimated Defendant to have 13 criminal history points, placing him in Criminal History Category VI. The United States notes that the Final PSR calculates Defendant to have accrued 19 criminal history points, which also places Defendant in Criminal History Category VI.[1]

---

[1] The criminal history points accrued by Defendant for Case Number 19-CR-296 do not count toward his criminal history score for Supervised Release violation in that case. Based on the parties' calculations, Defendant's criminal history score would fall from 13 to 9, placing him

### C.  Calculation of Advisory Guidelines Level

<u>Case Number 22-CR-211</u>

With an adjusted offense level of 12, and a Criminal History Category of VI, Defendant's advisory Guidelines range is <u>30</u> months to <u>37</u> months.

<u>Case Number 19-CR-296</u>

For a Grade B Supervised Release violation, with a Criminal History Category of VI, Defendant's advisory Guidelines range is <u>12</u> months to <u>18</u> months.

### III.  UNITED STATES' ANALYSIS OF THE STATUTORY SENTENCING FACTORS

As the Court is aware, 18 U.S.C. § 3553(a) requires the Court to consider certain enumerated factors in order to determine a sentence that is sufficient, but not greater than necessary, to satisfy those factors. The United States respectfully submits that the Section 3553(a) factors weigh in favor of a Guidelines sentence in this case.

### A.  The Nature and Circumstances of the Offense and Defendant's History and Characteristics

In determining Defendant's sentence, the Court must consider the nature and circumstances of the offense and Defendant's history and characteristics. 18 U.S.C. § 3553(a)(1). This factor weighs in favor of a Guidelines sentence.

As reflected in the PSR, Defendant has accumulated a substantial number of arrests and convictions in his 35 years of life. <u>Final PSR</u> (Docket Entry 45), at 8-34. Despite having had countless opportunities to rehabilitate and change his behavior, Defendant – while on Supervised Release to this Court for Unlawful Possession of a Firearm by a Convicted Felon – was once again

---

in Criminal History Category IV. Based on the Final PSR's calculation, Defendant's criminal history score would fall from 19 to 15, and he would remain in Criminal History Category VI.

arrested carrying a firearm in broad daylight on a city street. Defendant's voluntary, and repeated, refusal to obey the law outweigh any mitigation evidence with regard to this factor.

      **B.**      **The Need to Reflect the Seriousness of the Offense; Promote Respect for the Law; and Provide Just Punishment**

The Court must also consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). This factor weighs in favor of a Guidelines sentence.

The seriousness of unlawful gun possession in the District of Columbia, with all of its attendant consequences – whether intended or not – cannot be overstated. As noted above, this is Defendant's second conviction for unlawful firearm possession. Additionally, as noted in the Final PSR, Defendant was arrested and charged for unlawful gun possession in D.C. Superior Court in 2018. Final PSR (Docket Entry 45), at 30-31. The United States respectfully submits that a Guidelines sentence is necessary to not only properly punish Defendant for the seriousness of this offense, but also to encourage him to respect and obey the prohibition against convicted felons possessing firearms upon his release.

      **D.**      **The Need to Afford Adequate Deterrence to Criminal Conduct, and the Need to Protect the Public from Further Crimes of Defendant**

The Court must also consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct [and] to protect the public from further crimes of the defendant . . . ." 18 U.S.C. § 3553(a)(2)(B), (D). With respect to these factors, the United States respectfully submits that the depth and degree of Defendant's history of arrests and convictions indicates that a Guidelines sentence is necessary to satisfy these factors.

IV.     **UNITED STATES' SENTENCING RECOMMENDATION**

According to the terms of the Plea Agreement, and for the reasons described above, the United States recommends a sentence of 30 months incarceration in Case Number 22-CR-211, and a sentence of 12 months for Supervised Release violation in Case Number 19-CR-296, those sentences to run consecutively for a total sentence of 42 months' imprisonment.  The United States respectfully requests that Defendant be ordered to serve three years of Supervised Release upon his release from the Bureau of Prisons.

                                                Respectfully submitted,

                                                MATTHEW M. GRAVES
                                                United States Attorney
                                                D.C. Bar No. 481052

By:      */s/ James B. Nelson*
            JAMES B. NELSON
            D.C. Bar No. 1613700
            Assistant United States Attorney
            Federal Major Crimes Section
            601 D Street, N.W.
            Washington, D.C. 20530
            (202) 252-6986
            james.nelson@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

|  |  |
|---|---|
| By: | */s/ James B. Nelson* |
|  | JAMES B. NELSON |
|  | Assistant United States Attorney |